Ruffin, C. J.
 

 Although arising, no doubt, merely from inadvertence, there is a manifest error, for which the judgment would, at all events, be reversed. The court non-suited
 
 *108
 
 the plaintiff after a judgment by default against one of the defendants; upon which the case was standing for an enquiry of damages from the alleged breaches. The relators had established a cause of action against that defendant, and could not be non-suited.
 

 But we think there was also error on the merits. Even if the bond had been held to be valid, the court decided that the relators were not entitled to an action on it. ¥e think they are entitled to the money, and could maintain an action for it on the sheriff's bond, if duly executed.
 

 Sueh an interest, as remained in Josiah Jordan after his deed to Pool, was liable to execution, as an equity of redemption, under the act of 1812.
 
 Pool
 
 v.
 
 Glover,
 
 2 Ired. 129. Now, the sale of an equity of redemption is in its nature a sale subject to the mortgage debt. It is the interest of the mortgagor in the land, over and above the mortgage debt, that is sold; and the estate of the mortgagee is not touched. Consequently the sum bid on any part of it does not belong to the mortgagee; but it. is first to satisfy the execution, and, secondly, the surplus goes to the mortgagor, as the owner of the interest sold.
 
 Camp
 
 v.
 
 Cox,
 
 1 Dev. and Bat. 52. If another person, instead of the sheriff, had been trustee or mortgagee, he could not, then, have demanded this surplus from Pool: so, neither can Pool, as trustee, retain it. This is the necessary result from the provision of the statute, that an equity of redemption, as such, may be sold on a legal execution, and from the adjudications that a conveyance in trust for sale to pay specified debts stands upon the same footing as a mortgage, properly speaking. Then, if Josiah Jordan had lived until the sale of the land, this money would have been his. If so, it follows, that it belongs to his heirs and that they may recover it by law. Therefore the court of law must recognize the interest therein of the mortgagor himself, as the owner, and, in like manner, recognize the rights of those who succeed in point of title to the mortgagor. This land decend-ed to the relators, subject to the lien of the levy. It was to satisfy that debt, but the surplus belonged to the heirs. And
 
 *109
 
 as the surplus of land, if any had been unsold on the execution, after satisfying the mortgage debt, would have gone to' the relators, by parity of reason the surplus of the money, arising from a sale in the heirs’ time, goes to them also.
 

 As we are not aware on what point his Honor’s decision against the plaintiff was founded, it is our duty to consider each of them. Having held that the relators are entitled to this money, we are to consider, next, whether they can recover it in this form of proceeding and from these defendants: that is, supposing the bond to have been duly delivered. Upon this point also our opinion is with the relators. A purchaser must undoubtedly pay his whole bid to the sheriff, after getting enough to discharge the execution; must see that the purchaser satisfies the surplus to the owner of the property, before he can make a conveyance to the purchaser. Otherwise the defendant in the execution loses his property and is without any security for a part of the price. That the law never intends. Then, how does the sheriff receive this surplus ? It is true, •that he does not make that money by the direct mandate of ,the writ, nor is he bound by the tenor of the process to return the surplus into court with the writ. For the writ only commands him to make the sum recovered by the plaintiff and bring that into court. Yet as he is obliged by the law to receive the surplus, as a duty to the defendant, it is necessarily to be regarded as a duty of office, resulting from the prior duty, imposed by the writ, of making the sale. The money in the sheriff’s hands, therefore, may not be deemed
 
 in cus-todia legis,
 
 so as not to be stopped by attachment or other means, which may prevent the sheriff from paying it into court with the writ, yet his only authority to receive it arises out of his office, and for all money received
 
 virtute officii, the
 
 sheriff’s bond is a security, whether it belong to the plaintiff or defendant in the execution. We think this within the wprds of the bond in this case. It is money “ received by
 
 virtue
 
 of processnot payable, indeed, to the relators, “by /the tenor thereof,” but payable to them “ as the proper per-
 
 J
 
 sons to whom the same is due.” Even if those words in the bond
 
 *110
 
 did not cover this liability, the general terms “in ail things “well, truly, and faithfully execute the said office,” would be sufficient; and it is the duty of the court to interpret the obligation, so as, if possible, to secure all money which the sheriff can rightfully receive for the citizen.
 

 As the Superior Court did not give judgment against that surety, who submitted to a judgment for $428 17, upon the proviso there could have been a recovery upon a good bond, it must have been his Honor’s opinion, that the relators had no cause of action against the sheriff for an official default; and for the reasons given, this court holds that to have been erroneous. It would not, however, be necessary
 
 to
 
 send the cause back to another trial, if the omission to give the plaintiff judgment for that sum were the only error; because this court is authorized to render such judgment as the Superior- Court ought to have rendered, and consequently, judgment might ordinarily be given here for that sum of $428 17, as agreed on. But we cannot give it in this case, because there is no method, in which this court can dispose of the judgment by default against one of the defendants, which makes it absolutely necessary to reverse the whole judgment, and send the case to the Superior Court for further proceedings. That, however, we should not feel bound, or even authorized to do, however erroneous the opinion of the court might have been on the other points of law, if the bond sued on were so radically defective, that no action could be sustained on it against any person, since it would be useless to send a case to another trial, if the record itself showed that the plaintiffs never could recover. It becomes our duty, then, to enquire, whether this bond be thus defective. In pursuing that enquiry, and applying the result of it to the case, we find that the cause is brought into a singular state in consequence of the manner in which it was concluded in the Superior Court, and the legislation of the recent assembly pending this appeal. We think the bond is made good and effectual, by the acceptance of it for the. State by the Legislature, though at the time of the institution of the writ, and the decision in the Superior Court, no
 
 jndg
 
 
 *111
 
 ment could have been rendered on it. By the Revised Statute, c. 109, s. 8 and 9, a majority of the justices, or, if not, nine at least, are required to take the sheriff’s bond, and being taken by a less number, this bond was not duly delivered, and did not then legally become the instrument it purports to be.
 
 Shirly's
 
 case, 1 Ired. 597.
 
 Wall's case,
 
 2 Ired. 267, 272. We think, also, that the parol evidence was properly rejected, which was offered to prove that the requisite number of justices was present. The record of the court alone is competent evidence on that point.
 
 McAlpin’s case,
 
 4 Ired. 141. If the Superior Court had, upon those grounds, instructed the jury, that the bond had not become complete by an acceptance by the State, or any person authorised by law, and the jury had found that it was not the deed of the defendants, we should not have disturbed the judgment. We could not have done it, because the instructions and verdict were right in point of law at the time, and should not be disturbed by any.
 

 But unfortunately for the defendants, they caused the case to go off' by way of a non-suit, when owing to the condition of the suit, the plaintiffs could not legally be non-suited; which makes it our duty to reverse the judgment and order the issues of fact to be tried by another jury. Therefore we are not now to look to the question, whether this was the bond of the defendants, when the case was before tried or attempted to be tried; but we are to see, whether in law this instrument must be held to be their bond upon the trial that is to take place according to our judgment of reversal. If it must be so held, the plaintiff may recover, and therefore there should be a
 
 venire de novo.
 
 Now we think the act of 1844, ch. 38, s. 2, accepts this bond, and makes it effectual from the beginning. There is no doubt of the capacity of the State to take a bond; and the only question is, whether the assent of the State has been given to this bond. If taken in the case prescribed by law by those appointed by law to take bonds on behalf of the State, then we have held, that the bond is good, because delivered to and received by those, who had authority from the State to accept the delivery for her. But when the
 
 *112
 
 delivery is not made under those circumstances, and to those thus previously authorised, then we have held, that the instrument is not effectual, unless “the want of precedent authority be supplied by a subsequent ratification.”
 
 Shirly's case.
 
 By whom can such ratification be given; and what shall be the effect of it ? Whatever doubts may be entertained as to the authority of any other person or body to ratify the delivery to a third person of a deed in the name of the State, there can be no question, that such power resides in the legislature. That is the law making branch of the government, with which it rests to collect and declare the public will within the limits of the constitution, and make contracts for the State, or appoint and empower other persons so to do. Here the bond was not delivered to the persons appointed by law to receive it: and therefore it was necessarily to be treated, as if it were a bond made to the State, when there was no law to authorize any person to accept it for the State. But it is not, for that reason, so absolutely void, as that it can never become the deed of the party who made if, and as if that person had no capacity to make it. For there was an actual sealing and an actual delivery of the instrument by competent obligors: indeed a full execution of it in all respects, except that it was not delivered to the State, or to an agent of the State, but the delivery was to a stranger for the State. If, in such a case, the bond had been to a natural person, it would have been the deed of the party instantly, though delivered to a stranger, for it is good until the obligee refuse it, but then it is void
 
 ah initio. Butler
 
 v. Baker, 3 Rep. 26. Per Gould Justice, in
 
 Wankford
 
 v. Wankford, 1 Salk, 301. But in the case of deeds to the State, the rule is otherwise, as was held in
 
 Shirly's
 
 case, with much hesitation, (and, I own, agains t my impression,) the rule being, that they do not become the deeds of the party, unless they be accepted by the State. But that has been done by the act of 1844, c. 38. It enacts, that, all persons who shall be admitted by the County Court, and', sworn into office of sheriff, coroner, or constable, shall be held and deemed to be rightfully in office, until ousted by due
 
 *113
 
 course of law; and that all bonds,
 
 which, have
 
 been, or may hereafter be,
 
 taken by any court of pleas and quarter sessions upon admission of any person
 
 into either of the said offices, shall be held and deemed to be valid and effectual to all intents and purposes, notwithstanding any defect, insufficiency, or irregularity in the election, appointment, or admission of such person, or in any of the proceedings of the court in relation thereto.” This is as abolute an acceptance of all such bonds as could be declared. It does not, indeed, profess
 
 simpliciter
 
 to accept the bonds; but there is a necessary implication of such acceptance from the enactment, that all such bonds shall be held to be effectual in law, since they could not be effectual unless the State accepted the delivery to the stranger as the delivery to the State. This, then, supplies the
 
 desideratum,
 
 that was wanting in
 
 Shirly's case.
 
 The bond has been accepted, and therefore it is now an effectual bond of the obligors.
 

 The remaining question is, as to the time from which the bond becomes effectual: is it from the passing of the act, by which the acceptance of the legislature was declared, or from the execution of the instrument
 
 1
 
 It would seem that for the like reason, on which a bond is void,
 
 ab initio,
 
 which is delivered to a stranger and refused by the obligee, it must become good
 
 ab initio,
 
 when accepted by the State upon such a delivery to a stranger. It must be so upon the intention of the parties; and, at all events, that must be the presumed intention in relation to official securities of this kind, and was unquestionably the actual intention of the legislature in the act of 1844. As has been before remarked, the bond, though not effectual by the delivery, because to a stranger, was not absolutely void, in the sense that it would have been if there had been no delivery at all, but the obligor had kept it in his own pocket. For, if that were so, there could be no operative acceptance by the State subsequently; as it requires the concurrence of the obligor in tendering and of the obligee in accepting the delivery, to render the deed complete and effectual. But it is sufficient that there should be such concurrence in
 
 *114
 
 assenting to the contract, though there may not be a concur* rence as to the time of expressing that assent. The actual delivery, therefore, has some effect; and that effect, as the delivery was not absolute and final, is to be deemed a conditional delivery and must be in the nature of a delivery as an escrow. It can mean nothing less than this ; that the obligors delivered the deed to the justices, to be their deed to the State, if the State would vouchsafe to receive it. It might have been held, as it once seemed to me, that by allowing the party to remain in the office, upon his admission into which he gave the bond as a security for the faithful performance of its duties, instead of ousting him because he was
 
 improperly
 
 admitted without having given bond, the sovereign sufficiently manifested an acceptance of the official bond. But supposing an express assent to be necessary, it is here given: and the question is, as to the operation of it, as given. Such a conditional delivery is binding on the obligor, and he cannot recall the deed. It is true, that when a deed is delivered as an escrow it is of no more force until the conditions be performed, than if he, who made it, had kept it. Yet, when the conditions are performed, the deed is thereby made good with out any further delivery, unless such second delivery be prescribed as one of the terms of delivery. Of that position a question, it seems, has been made, and some have thought that, to make the deed perfect, the person, to whom it was delivered by the maker, should make a second delivery of it to the party himself. But the contrary is laid down for law in Shepard’s Touchstone, as deduced from 5. Rep. 84, and 3 Rep. 36, and it is there said, that if the party, that doth make the deed, be not, at the time of making thereof, disabled to make it, the first delivery is good, “for if either of the parties to the deed die before the conditions be performed and the conditions be afterwards performed, the deed is good; for there was
 
 traditio inchoata
 
 in the life time of the parties; and
 
 postea consummata existens
 
 by the performance of the. conditions ; it taketh effect by the first delivery, without any '■ new or second delivery.” Touch. 59. The truth, however,
 
 *115
 
 probably is, that a second delivery will be required or dispensed with according to the nature of the case, and as it may best comport with the intention of the parties and the purpose they had in view, to hold the deed, upon the performance of the conditions, to be a deed only from a second delivery, or from the original delivery by relation. For in the same book, p.
 
 72-
 
 it said, that escrows
 
 “
 
 shall take effect from, and have relation to the time of the first delivery, or not, as circumstances may require, and
 
 ut res
 
 valeat: for if relation will hurt and make the deed void (as in some cases it may) then it shall not relate: but if relation will help it, as in case where a
 
 feme sole
 
 deliver an escrow, and before the second delivery she is married or dieth, in this case, if there were not a relation, the deed would be void, and therefore it shall relate. Sp if one disseise me of an acre of land in D. and I release him all my right in my lands in D. and deliver it to a stranger as an escrow until a time, and before that time he disseise me of another acre there; in this case, this release shall not by relation extend to this other acre, to bar me of that also. B ut as to collateral acts, there shall be no relation at all in this case_ And therefore, if the obligee release before the second delive. ry, the release is void, and will not bar the obligee of the fruit of his obligation.” Upon the passage quoted, Mr. Preston, the learned editor of the work, remarks, that the relation depends on the nature of the transaction, and the presumable intention of the parties. In point of title, (admitting the par. ties, who are grantors, are competent as to ownership, and free from disability.) the deed will take effect from the first delive. ry, so as to overreach all intermediate encumbrances. These principles and authorities seem to settle this case. There can be no hesitation as to the intention to be presumed in the ob-ligors in making, and in the Legislature in accepting this bond. This is a sheriff’s bond, given upon entering into that valuable office, in which he may serve for one year, if the State will accept his bond and allow him. But he is liable to be ousted at any moment, as having been admitted without law-fill warrant, inasmuch as he failed to give such a bond as the
 
 *116
 
 law required, and he cannot expect the sovereign will allow ■ him to remain in office without any security for the discharge of his duties. Therefore, by giving this as his official bond, there is an irresistible implication of an intention of the sheriff, and, by consequence of his sureties, that, in case it was not a proper official bond according to the statute, it should, nevertheless, be the bond of the obligors for the purposes expressed in it, if the State would accept it as such, and allow this person to serve in his office accordingly. There being such an intention, it is the plain duty of a court to give effect to it, and uphold the obligation, if it can be done consistently with the law, as the bond is not for any immoral or unlawful purpose, but is for the benificent purpose of securing the public and the citizen from any injury by the malversation of the principal obligor in an important office. It cannot be, in such a case, that it was intended the deed be delivered the second time, or that it should operate only from the time it was expressly accepted ; for, being given to
 
 the State,
 
 there can be no actual delivery
 
 to the obligee,
 
 and the intention was, that the State, by accepting it, should make it a security for the whole term of office, as well the past as that to come. So, too, it is clear, that, with that view, the Legislature accepted it. The provision, that all bonds which
 
 have been taken,
 
 shall be held to be good, is conclusive as to the legislative intention. If it be said, that those words refer to bonds taken from persons before the passing of the act, who were in office at the making of the act, which
 
 prima facie
 
 would be the proper construction, as statutes are not to be deemed' retrospective but from necessity; the answer is, that such an interpretation cannot be received, for as much as it would render those words “have been taken” altogether inoperative. For, as soon as the inconveniences were understood, which would arise from the principle of
 
 Shirly's case,
 
 the Legislature proceeded to provide a remedy by enacting in 1842, c. 61, “ that whenever
 
 thereafter
 
 any instrument shall be received under, the sanction of a court of record, purporting to be a bond to \ the State, for the performance of any duty of any office, such 1
 
 *117
 
 instrument, notwithstanding any irregularity, or any in the conditions or penalty from the provisions prescribed by law, shall be valid and may be put in suit for the benefit of any person injured.” That act therefore covered every case that might happen after 1842, in terms still more conclusive, if possible, than those of the act of 1844. Now, the offices of sheriff, coroner, and constable, are but from year to year, as their bonds are to be renewed, annually. Consequently, there could not be at the end of 1844, any person in either of those offices, whose bond had not been given under the act of 1842; and therefore, the act of 1844 must have been directed solely to such bonds as had been given by such officers before 1844, and must be held to embrace them. There was no other occasion for the act, but to embrace them.
 

 Then we have the case, in which the obligors delivered their bond to a stranger payable to the State, on the condition that the delivery should be deemed absolute, and the instrument be their deed, if the State would accept it, with an intention on their part, that the instrument, if accepted, should cover a whole official term, as the same is, indeed, expressed in it, and in which the State has expressly accepted it, through the Legislature, with the same intention, plainly declared; in such a case, we think it our bounden duty not to defeat the intention, but to give effect to it, upon the principle,
 
 wires magis valeat qiictm, pereat;
 
 which can only be done by holding it to be the deed of the parties by relation
 
 ab initio.
 
 Consequently, the judgment must be reversed, and a
 
 venire de novo
 
 awarded.
 

 Per, Curiam, Judgment reversed and
 
 venire de novo
 
 awarded.