"One day after date we promise to pay Martha A. Parker, guardian of the minor heirs of James Parker, deceased, the sum of three hundred and forty dollars for value received. Witness our hands and seals — this 26 May, 1848. William Ellison, (Seal.) D. H. Latham, (Seal.) Witness: D. H. Farrow. W. A. Lanier, (Seal.)
On which was endorsed:
"Pay the within to Isaiah Respass, without recourse on me, 3 June, 1848. (Signed) Martha A. Parker."
The plaintiff proved that the signatures and seals appearing upon the writing declared on were those of the defendants, and of William Ellison; and that the writing was left with said Ellison to raise the money mentioned in it; that said Ellison presented the writing to Martha A. Parker, who refused to receive it and to advance the money on it, and she returned the same to him; that said Ellison afterwards wrote the words appearing on the back of it, and sent the paper to Mrs. Parker, telling the messenger that if she would sign it, he thought *Page 142 
that Respass would advance the money, and requested her to sign it, which she did, and returned it to said Ellison; and that said writing afterwards came to the possession of the plaintiff.
His Honor, upon this state of facts, was of opinion with the plaintiff. There was a verdict and judgment accordingly, and the defendants appealed to the Supreme Court.
The case was argued at a former term by Rodman and Shaw for the defendants, and at this term by Shaw, who contended:
1. That by Mrs. Parker's refusal to accept the instrument, it was thereby made void, and void ab initio, so that she could not thereafter (140) accept it so as to make it valid. Butler and Butler's case, 3 Rep., 26; Wankford v. Wankford, 1 Salk, 301; S. v. Pool,27 N.C. 105; Threadgill v. Jennings, 14 N.C. 384.)
2. After her refusal to receive the instrument, she could not legally endorse it, because she had made it void by her refusal, and because she had no legal authority to change the obligee from her own name to that of Respass. That her act done after her refusal, and without authority under seal from defendants — if held to be a legal endorsement — would, in effect, enable her to change the obligee, and make a new instrument. (Davenport v. Sleight, 19 N.C. 381; Graham v. Holt,25 N.C. 300.)
3. A bond is to be regarded, not as a promissory note, but on the same footing as any other deed. Marsh v. Brooks, 33 N.C. 409; Graham v. Holt,supra.) "The nature of a bond in its inception and before endorsement, is not touched by the statute making bonds negotiable by endorsement." The statute dispenses with none of the formalities requisite to make an instrument a perfect bond. (33 N.C. 409.)
4. But if the rules applicable to promissory notes did apply to endorsed bonds, the plaintiff is not entitled to recover — the bond having been endorsed after it became due and received by the endorsee, after it was due, from one of the supposed makers; because he stands as one suing for it as trustee for the payee, and under authority from him, and is not entitled to the right of an endorsee who took the note in good faith for a valuable consideration. Vallet v. Parker, 6 Wend., 615; 9 ibid., 170.) He also cited on this point Chit. Pl., Springfield Ed. (1842), 216-17, 648, 650; Turner v. Beggarly, 33 N.C. 331.
The action is on a sealed instrument called a single bill, not assignable at common law, but made so by statute. A man by the name of Ellison is the principal, and it is admitted that the present *Page 143 
defendants were his sureties. The bond is made payable to the plaintiff as a guardian, and intended to raise money for the use of Ellison. It was executed by the defendants and Ellison, and sent by an agent to the plaintiff, who refused to accept it. Subsequently it was sent back to her by Ellison, with the endorsement as it now appears, (141) written by him, with the request to her to sign it, for that Respass, for whose benefit the action was brought, would then advance the money upon it. She did so, and the sole inquiry presented to us, is as to the legal validity of the instrument.
Delivery is an essential part of every deed, and as there is no set form of words or of acts by which it may be done, any words or acts on the part of the obligor or grantor, which show the animus disponendi, will be sufficient. As if a deed be sealed and lying on a window, and the grantor say, "there it is; take it as my deed," or, "this will serve" — these are good deliveries. (Shep. Touch., 124; Thomas' Coke, 2 Vol., 276.) It is not pretended that when first presented to Mrs. Parker there was any delivery, for she expressly refused to accept it; and acceptance by the grantee or obligee, is as necessary to a valid delivery as the transfer on the part of the grantor or obligor. Woodman v. Coolbroth, 7 Greenl. Rep., 181. But it is agreed that the second delivery was completed by the endorsement of the obligee. Without inquiring whether, under the special circumstances of this case, her endorsement was an acceptance or not, we think it was not such an acceptance as bound these defendants. We have seen that the consent of the maker of a deed is essential to a delivery. If the circumstances go to show that he did not consent, it is not his deed, even though he signed and sealed it, and was bound by a previous contract to deliver it. Coolbroth's case, supra. If a man throws a deed on the table, and says nothing, and the other party takes it, this does not amount to a delivery, unless the jury find it was put there with an intent to deliver. Owen, 95; 1 Leon., 140; 1 Touch., 124, n. 28. If a patron draws a presentation in writing and puts his seal to it, and leaves it in his study, and the party for whom it is prepared gets it without the license or privity of the patron, and brings it to the Bishop, and is thereupon instituted and inducted, it is all void. (Yelverton, 7.) Where the first delivery of a deed fails for want of acceptance by the grantee, then a new delivery must be made; otherwise the deed is void. 13 Vin. Abrid., title Deeds, n. 2, p. 27. What are the circumstances of this case? The instrument declared on was signed and sealed by Ellison and the two defendants, for the purpose (142) of borrowing money from the plaintiff, Mrs. Parker. She refused to accept it. It was then functus officio, and to give it vitality a second or new delivery was necessary. To this second or new delivery *Page 144 
the assent of the defendants was necessary, so as to bind them. There is nothing in the case to show that they did so assent; on the contrary, there is much to show they never did. The bond is dated 26 May, 1848, payable one day after date, and the money was for the use of Ellison, as we understand. On 3 June following, eight days thereafter, it is endorsed to Respass by Mrs. Parker, the obligee. It does not appear that the present defendants knew that the money was not received from her upon the first application. Again, when the instrument was presented to Mrs. Parker the second time, it was not for the purpose of getting the money from her, for she had refused to advance it, but from Respass, who actually did advance it to Ellison — he was, in substance, the obligee. If the present defendants did know that it could not be procured from Mrs. Parker, but that Respass was to advance it, why was not the instrument made payable to the latter? The endorsement gave to Respass no additional security, for it discharged Mrs. Parker from all responsibility. It is obvious that Ellison managed the latter part of the business without consulting the defendants. If he could, without a renewed authority from the defendants, deliver it eight days after the first, why not in eight months? The instrument in its original concoction was not intended by the defendants to be thrown into market to raise funds from any one who would advance them; but from a specified individual, and that person refusing to lend money upon it, it must be shown that the defendants agreed to the new intent, that is, to becoming bound to Respass, which does not appear.
But it is argued on behalf of the plaintiff, that as by our act of Assembly, bonds are made negotiable, that therefore they are transferable by endorsement as bills of exchange and notes of hand, and are governed by the same rules and regulations. That is true; after the endorsement, the laws governing bills of exchange and promissory notes do apply to them. But still the instrument, being a sealed instrument, must possess all the requisites to make it a good deed. If it be deficient in any such property, the endorsement cannot supply the defect; (143) it cannot make that legal which never was so. Upon this point we consider the case of Marsh v. Brooks, 33 N.C. 409, full authority. In replying to this particular argument, the Court says the instrument must be a perfect bond for money, before it can be negotiated; and further, although the law of the State makes bonds negotiable, yet their nature in their inception, and before endorsement, is not touched by the statute, and remains as at common law. We think there is error in the judgment below.
PER CURIAM.
Judgment reversed, and a venire de novo awarded. *Page 145 
 Cited: Baxter v. Baxter, post, 342; Dewey v. Cochran, 49 N.C. 187;Gregory v. Dozier, 51 N.C. 5; Whichard v. Jordan, ibid., 56; Bryan v.Steamer, 53 N.C. 262; Parker v. McDowell, 95 N.C. 222; Johnson v.Lassiter, 155 N.C. 51.
Distinguished: Parker v. McDowell, 95 N.C. 219.