Henderson, Chief-Justice.
 

 — The,
 
 fieri facias
 
 of’ the Newbern Bank, to whose rights
 
 Harrison
 
 is substituted formed no lien, independent of our act of 1812,
 
 (Reo.
 
 c. 830) on
 
 Hunt’s
 
 interest in the property conveyed in trust to
 
 Battle,
 
 neither this property itself, nor the trust resulting to
 
 Hunt
 
 being the land, tenements, goods or chattels of
 
 Hunt, As
 
 therefore if could not be levied on, or sold by the common law', to satisfy the execution, no lien arose by its issuing, or what the Sheriff calls its levy,, For as the lien arises, or is created, as a mean to the end, it would be in vain for the law to raise it, when the end could not be attained. Nor is the trust in favor
 
 of Hunt
 
 one of that description, authorized to be taken in execution, under the first section of the act of 1812. The use or trust, there spoken of, is apure ami unmixed one,” for the doing execution under that section, to use its own terms, divests the estates both of the trustee and
 
 cestui que trust,
 
 and transfers them to the purchaser. In the present case therefore, if it operated, it would give both
 
 Hunt’s
 
 and
 
 Battle’s
 
 estates to the purchaser, under the
 
 fieri facias,
 
 and entirely disable
 
 Battle
 
 from performing the other trusts. In other words,
 
 Battle
 
 is not seised or possessed to the use of, or in trust for
 
 Hunt,
 
 but to the use of
 
 Hunt
 
 and others, whose interests are no ways united with
 
 Hunt’s,
 
 but are entirely of a different nature. This has been the construction, heretofore put upon the act, and it is believed to be the correct one.
 

 But we believe, that so far as regards the land,
 
 Hunt’s
 
 interest may be sold under the second section of the act; for we cannot distinguish his right to have the lands
 
 *542
 
 again, after the payment of the debt, for which this stood as a security, from an equity of redemption. It has all the essentials of that right, although it wants some of its formal parts; it is conveyed to secure the payment of a debt; upon the payment of the debt,
 
 Hunt
 
 has a right to call for a reconveyance. Whilst in his possession, by the creditor’s consent, he is not accountable for the profits. This trust, to be sure, can be closed by a sale, without the intervention of a Court of Equity. The aid of this Court to foreclose an equity of redemption, is required only because the law will not trust the creditor to be both his own agent, and that of the debtor, whose rights it may be his interest to sacrifice. This trust is free from that objection, because the parties have agreed on their trustee. We cannot therefore distinguish this interest from an equity of redemption ; and its exemption from sale, under
 
 ajfieri facias,
 
 is equally an evil with the exemption of equities of redemption. The mischief is precisely the same, and we therefore think it within the spirit of the second section of the act of 18X2.
 

 But that act affects equities of redemption in real estate only : “ lands, tenements, rents and hereditaments,” are its words. It extends not to trusts, arising out of personal estate. As to that, therefore, the execution formed no lien. We also think, that the execution creditor has the right of coming into this Court, to make the lien effectual as to the land. For although lie has a remedy at Taw under his execution, it is not an effectual one. If lie sells at Law, he must sell
 
 Hunt’s
 
 right of redemption only. Its value is unknown. It depends on how much of the debts are paid. This might be known to some, and unknown to others. Bidders, therefore, would stand on unequal grounds; and after a sale, a purchaser would have to come into this Court, to compel the trustee to settle the trust debts, and to receive them from him ; or to make a sale to raise them, and to pay him the overplus. A sale of property so situated would
 
 *543
 
 encourage speculation, that bane of steady and persevering industry and sound morality.
 

 These are some of the reasons which induce the Court to lend its aid. I admit they impugn the policy of the second section of the act of 1812. But the jurisdiction of this Court is not ousted, because a remedy is given at Law, unless it be a plain one. The remedy here is more effectual, because this Court ascertains all the claims upon the thing, and sells the
 
 corpus
 
 itself. The purchaser gets what he purchased, no more and no less. He does not make his gain by another’s loss.
 

 As to the trusts upon the personal estate, there is no remedy but in this Court; and that there is here, we en tertain no doubt. For do we not mean to consider tins a debt due from
 
 Battle
 
 to
 
 Hunt,
 
 even after sale, but as
 
 Hunt's
 
 property in his hands, which cannot be reached at Law. As to the property before the sale, there is no
 
 doubt;
 
 for it is an estate or interest in Equity, and so it is after sale. For
 
 Battle
 
 is not his debtor, but his trus tee. He holds the money as he held the property. When the question of a pure debt arises, it will be time enough to consider, whether it cannot now be readied to satisfy debts. As to the want of the return of
 
 nulla bona,
 
 to give a right to call in the aid of Court, it is deemed to he unnecessary. In this case clearly it is not required, as to those executions which attach on the real fund — , and we think that the want of it is supplied, as to all the judgments ; for the deed in question conveys the whole of
 
 'Hunt’s
 
 property, which an execution could reach. But still the
 
 mere creditor
 
 must establish his demand by a judgment. As to the orders and assignments, they have a clear priority over ail executions on the personal fund, before such creditor by execution became a party to this bill; that is, orders and assignments have priority to mere judgment creditors, before they became parties Plaintiffs. But the
 
 teste
 
 of an execution, which over^reaches these assignments or orders? will hate priority
 
 *544
 
 over them, as regards the real estate. As to the other judgments competing with each other, they all stand on equal grounds, regardless of the time of their being ob-£ajned, or execution issued thereon. An
 
 alias
 
 or
 
 pluries
 
 execution regularly kept up, will as to trust estate in the land, relate back to the
 
 teste
 
 of the original.
 

 The Master will make an additional report to the next Court, in which he will ascertain the net sum in the hands of the trustee, and will charge him with interest, if he has made interest, and may interrogate him on oath as to that point. He will allow him a commission of two and a half per cent, besides actual expenditures in relation to the trust, and in his attendance in this suit. He will distinguish between the proceeds of the real and personal estate ; the amount of debts paid under the trust deed, and charge them in the first instance to the personal fund. He will present a scheme for distribution, according to the principles of the foregoing opinion. Judgmentss which are partly satisfied out of the real estate, will come in for balances with other judgment creditors. To give thé directions in a few words, they are these : As to the real fund, executions bind from their teste — orders and assignments from their date on both funds— they are of equal dignity; priority of right of satisfaction being gained only by priority of date. Becoming a Plaintiff precludes voluntary transfers as to him. All judgments affecting the personal fund stand in equal degree. The costs are to be paid out of the fund. The funds are directed to be marshalled, in favor of those execution creditors, who had obtained a
 
 lien
 
 at Law upon the real fund, because the creditors under the trust deed have two funds at Law 5 they but one»