Ruffin, C. J.
 

 We concur in the position taken for the defendant, that the action cannot be maintained, if Jordan’s interest in the land, as set up by the Sheriff and bought by the defendant, was not the subject of execution. We do not mean that a purchaser at a Sheriff’s sale is not bound for his bid, unless he get a good title ; for, as he may call for a conveyance from the Sheriff, how inadequate soever his bid may be, so, probably he must pay his bid, although the title of the defendant in the execution be defective — provided the interest offered, if it existed, was such an interest as the Sheriff could sell and convey. But if the Sheriff undertake to sell what he has no power by the writ to sell — -what is n'ot goods, chattels, lands, or tenements within the sense of the writ, as, for example, a bond or bank stock — it is the same thing as selling without a writ. As a judicial sale it must be a nullity ; the deed tendered by the Sheriff would be inefficient ; and as the Sheriff could not fulfil the contract on his part, so he ought not, we think, to compel the bidder to accept a void deed and pay his bid. The decision of the, case, therefore, must depend upon the enquiry, whether this
 
 *131
 
 was a sale without authority or not. It is a point of much importance ; and was once at least, if not now, a point of difficulty. It was argued fully and ably for the defendant, and has been very deliberately considered by us; and we have now to say that we feel ourselves constrained to affirm the judgment of the Superior Court.
 

 If the matter were
 
 res
 
 integra, there would, doubtless, be more hesitation in coming to the conclusion we have; though we cannot avoid the conviction, that, according to the most approved principles of interpretation, the construction put upon the second sect, of the Act of 1812, (Rev. Stat. c. 45, s. 5,) in
 
 Harrison
 
 v
 
 Battle,
 
 2 Dev. Eq. 537, is the proper, nay, the unavoidable one. That case determines the precise point, that a conveyance of land of this nature by a debtor to a third person in trust by a sale to pay the bargainor’s debts, with a resulting trust to the bargainor, leaves an interest in the bar-gainor, which is not a trust within the first section of the act, but is an equity of redemption within the second branch of it. As an authority none could be more apposite to the case before us. The counsel, indeed, endeavored to distinguish the cases upon the ground, that in
 
 Harrison
 
 v
 
 Battle
 
 the time for the sale had passed and enough of the estates conveyed had been sold to pay all the scheduled debts: whereas here the time for a sale has not arrived, and no part of the debts has been paid. But that distinction cannot be sustain ed; for, although there'might be something in it, if the case stood on the act of 1812 by itself, yet the subsequent act of 1822 (Rev. St. c. 45, s. 5) subjects the legal right of redemption to execution, in like manner as the equity of redemption was liable under the previous act. Therefore, whatever might have been sold, after the day of forfeiture of a mortgage, may now be sold before that day. The same principle is applied by the Legislature to both cases.
 

 Arguments were then strongly urged against the principle of that case, upon the score of the uncertainty of the interests and their complexity, as existing in the different parties —thedebtor, the creditors scheduled and those claiming by assignment subsequent to the deed and by executions, and the trustee; and the danger was clearly pointed out of loss and in
 
 *132
 
 jury, sometimes to one of those parties, and sometimes to another, and especially of numerous losses to the embarrassed debtor. It was not needful that the misehiefs should be thus arrayed to make the Court sensible and fully sensible of them. . , . . , They were duly appreciated by the Judges, who sat in the Court when
 
 Harrison
 
 and
 
 Battle
 
 was decided; and, as far as was allowable to persons injudicial stations, the Court, when cases arising under it have come up, has frequently since intimated its impression, “ that the second section of the act would be found to be practically impolitic throughout.” A sale .of such resulting trusts is making a bargain so completely in the dark, as to the value of the subject of the sale, as to amount, in almost every case, to nothing more nor less •than sheer gambling. It is a lottery, in which but little will be given for the tickets. Cases, too, may be supposed of conveyances, to which it would be hard to believe the Legislature saw the consequences of applying their enactments. As if the deed convey both land and personal estate, the latter of which is not within the act; if a creditor sell the equity of redemption in the land by execution, shall the mortgage debt then be made out of the land or the personalty? If the deed be .to secure the debt of a third person, and so is merely a collateral and supplementary security, how is is it to be then? So, in a variety of other cases equally conceivable, the danger is great of producing by such sale's expensive and protracted litigation, of encouraging speculation, and overwhelming an indebted man in ruin by bringing his property to market with a doubtful title and with its value generally unknown. But forcible as these objections are, they cannot justify the Court in striving against the policy of the Legislature, by putting on the statute such a construction, as will virtually repeal'it by enabling every person to evade it by the simplest contrivance. The ques. tion is, what is a mortgage, and what is an equity of redemption, within the sense of the act? Is a deed of trust, like the one before ns, of that character? To determine these questions, the arguments from the mischiefs and losses just spoken of, do not give the least aid. For those mischiefs and lossesjwill be worked as well by an instrument, which is a
 
 *133
 
 mortgage in the most appropriate sense of that term, as by the ordinary conveyance in trust for payment of debts by a sale-If it be said, that the Legislature could not have forseen the effects of the enactment, else it would not have been made; and therefore that the Court ought not to carry the act beyond its words: the answer is, that if unexpected evils arise out of the legislation of the country, it is not for Courts to refuse to administer the law in its true sense, while it stands in the statute book, but it is for the General Assembly to repeal or modily their act. It is probable the law owes its origin to temporary causes. For those who were in active life at that day, will remember, that there were a few conspicuous persons, who were rather notorious for encumbering their estates with mortgages, which kept off executions; and that, owing to the defective organization of the Courts of Equity at the time, there was great delay in reaching them before these Courts; so great as to become a matter of general complaint. It is true that subsequent changes in the judicial system now facilitate decisions of causes in Equity; and, as persons practically conversant with the subject, we might think it better to have the encumbrances ascertained, and a clear title sold under the supervision of that Court, rather than proceed on the execution at law under all the difficulties enumerated. Yet the law-makers, aud not ourselves, are the arbiters of policy; and it is our duty to execute the law in the spirit in which it is enacted. Now, as has been already said, not a reason can be given against the justice and propriety of selling a resulting trust arising on such a deed, which would not equally condemn the sale of a proper Equity of redemption. AVhen such a sale is argued against, therefore, the fault is found with the policy of the act, not with its construction. The construction was unavoidable. It is to be remembered, that the purpose of the act is to aid the creditor, who has gone through the Courts of Law and established his debt, to get the fruit of his judgment by the sale of a valuable interest of the debtor under his execution. The statute, therefore, perports to be beneficent to the creditor, and must be received by a Court as remedial in its character, and construed so as to suppress the previous mis
 
 *134
 
 chief and advance the remedy. With this view of our duty, the Court could not allow the execution creditor to be baulked, and turn around to begin another litigation in Equity, by the literal impediment, that the debtor had not an equity of redemption, because he had not conveyed his land to his creditor, with a power to redeem it by paying the debt, but had conveyed to a third person with the power to call for a re-conveyance upon payment of the same debt before a sale. Such an interpretation would have been paltering with the sense of the Legislature. In substance the debtor has the same interest in each case, and, therefore, it must be liable alike in both instances. Whether, then, we have a regard to the adjudication in
 
 Harrison
 
 and
 
 Battle
 
 as an authority, or to the reasons on which it proceeded, we must affirm the judgment in this case.
 

 Per Curiam. Judgment affirmed