F. W. TRIMBLE and JNO. H. TRIMBLE v. CLAUDE HUNTER et al.

*Deed—Trust—Equitable Fi Fa—Lien, Creditors—Marshalling.*

H. being indebted to A., a commission merchant, for advances, executed a deed in trust, in which the amount of the indebtedness was precisely stated, and in which it was recited that A. then had on consignment certain tobacco, the proceeds of which were to be applied to the said indebtedness, and then conveyed certain growing crops and real estate to secure any balance due after the application of the proceeds of the sale of the tobacco. An unsecured creditor of H. recovered judgment upon his debt, and upon the return of execution unsatisfied, brought his action to compel a settlement of the trust. and to subject the excess of the property, after satisfying the secured creditors, to payment of his judgment : *Held,*

1. That H. had a resulting trust under the deed upon which the judgment, when docketed, acquired a lien, but which could only be enforced by an action in the nature of an equitable execution.

2. That, although the amount due the secured creditors was inaccurately recited in the deed by mistake—a larger sum being due them—yet as against creditors not parties to the deed, they were bound thereby, and that no parol agreement between them and the debtor, that any such excess should be secured by the conveyance, could could be set up against the unsecured creditor.

3. That the debtor and secured creditors could not make any other disposition of the sales of the tobacco than that provided in the conveyance, to the prejudice of other creditors.

This is a CIVIL ACTION, tried upon exceptions to referee's report, before *Armfield, J.,* at May Term, 1889, of VANCE Superior Court.

It appeared that the plaintiffs obtained judgment against the defendant Claude Hunter, in the Superior Court of the County of Vance at the May Term thereof of 1887, for $1,907.23, with the interest on $1,851.68 thereof from the 23d of May, 1887, and for $7.51 costs ; that an execution issued upon such judgment and was returned wholly unsat-

isfied, and that such judgment debtor had no property in this State other than such as shall presently be mentioned.

It further appeared, that the said Hunter on, and before the 10th day of July, 1886, was indebted to the defendants composing the business firm of Arrington & Scott of Richmond, Virginia; and, likewise, to the defendants, composing the like firm of John Arrington & Sons of Petersburg, in the same State, in large sums of money; that to secure the payment of such indebtedness, Hunter and his wife executed to the defendant William J. White their deed of trust, which was duly registered, and the following is so much and such parts thereof as need be reported here:

" This indenture, made and entered into on the 10th day of July, A. D. 1886, between Claude Hunter and Lizzie Hunter his wife, of the county of Vance and the State of North Carolina, of the first part, and Wm. J. White, of the county of Warren and the State aforesaid, of the second part, witnesseth: That, whereas the said Claude Hunter is justly indebted to R. T. Arrington, S. P. Arrington, R. T. Arrington, Jr., and F. W. Scott, of the firm of Arrington & Scott, of the city of Richmond and the State of Virginia, by account for money advanced and lent by them to him up to and including this date, in the sum of ten thousand and five hundred dollars, and to R. T. Arrington and S. P. Arrington, of the firm of John Arrington & Sons, of the city of Petersburg and State of Virginia, by account for money advanced and lent by them to him up to and including this date, in the sum of ten thousand dollars; and, whereas the said Claude Hunter has consigned and delivered to said Arrington & Scott forty cases and packages of leaf tobacco on their said account against him, to be sold by them for him, and the net proceeds of the sales, after deducting their commissions and charges for selling the same, to be applied to their said account against him, and has consigned and delivered to said Arrington & Sons forty-two cases and pack-

ages of leaf tobacco on their said account against him, to be sold by them for him, and the net proceeds of the sales, after deducting their commissions and charges for selling the same, to be applied to their said account against him; and, whereas, after the sale of the said leaf tobacco as aforesaid by the said Arrington & Scott and the said John Arrington & Sons, and after the application of the net proceeds of the same towards the payment of the said account, due as aforesaid by the said Claude Hunter to the said Arrington & Scott, and to the said John Arrington & Sons, there may remain balance due on the same; whereas the said parties of the first part desire to secure the payment of any such balance as may remain by a deed of trust upon real and personal estate: Now, this indenture witnesseth, That the' said parties of the first part, &c., * * * * * have bargained, sold and conveyed, and do hereby bargain, sell and convey, unto the said party of the second part and his heirs and assigns forever, the following lots or parcels of land, situated in the said county of Vance, * * * * and also all the right, title, interest in and to the tobacco crop now growing and being cultivated by the said Claude Hunter upon certain lands in said Vance County, near Henderson, on the lands of Walter Milne and J. W. Booth: To have and to hold, &c., * * * * in trust, nevertheless, and for the purpose in this deed declared. If, after the sale of the said leaf tobacco as aforesaid, consigned and delivered as aforesaid by the said Claude Hunter to the said Arrington & Scott, and to the said John Arrington & Sons, and after they shall have applied the net proceeds of said sale to the said accounts against the said Claude Hunter, there shall remain any balance or balances due to either one or both of said firms on their said accounts against the said Claude Hunter, and the said Claude Hunter shall pay, or cause to be paid, to the said Arrington & Scott and to the said John Arrington & Sons, or their assigns, the said balances,

with interest on the said balances at the rate of 8 per cent. per annum, on or before the 1st day of December, 1886, then this indenture to be void and of no effect. If, however, after the said sale of the said leaf tobacco by the said Arrington & Scott and John Arrington & Sons, and the application of the net proceeds aforesaid of the sales towards their said accounts against the said Claude Hunter, any balance or balances on the same shall remain unpaid, and if the said Claude Hunter shall fail to pay the same on or before the 1st day of December, 1886, then the said party of the second part shall take possession of the said crops of tobacco now growing and being cultivated by the said Claude Hunter upon the lands aforesaid of Milne and Boothe, and sell the same in open market in Henderson, North Carolins, for cash, and apply the net proceeds of the said sale proportionately to the payment of the said balance which may be due to the said Arrington & Scott and John Arrington & Sons, and pay the surplus, if any should remain, to the said Claude Hunter, after deducting a reasonable compensation for his services; and if the proceeds of the sale of the said crops of growing tobacco, now growing and being cultivated by the said Claude Hunter, shall not be sufficient to pay said balance or balances, then it shall be lawful for the said party of the second part to sell the real estate, and the appurtenances herein conveyed and mentioned, at public auction, to the highest bidder, for cash, at the court-house door in Henderson, in said county of Vance, after having advertised the sale at the court-house door aforesaid and at four other places in said county of Vance for at least thirty days, and with the proceeds of the sale he is to pay whatever sum or sums may be due by said Claude Hunter to the said Arrington & Scott and John Arrington & Sons on the balance of which may be due to them by the said Claude Hunter on the aforesaid accounts, and surplus, if any, he is to pay to the said Claude Hunter, after deducting a reason-

able compensation for his services in making the sale. It is agreed and understood between the parties aforesaid that if it should turn out that, after a sale of said leaf tobacco, consigned and delivered as aforesaid by the said Claude Hunter to the said Arrington & Scott, the amount realized from said sale should be more than sufficient to pay their said account, then that they may pay the said John Arrington & Sons such excess, the same to be credited on the said accounts of the said John Arrington & Sons against said Claude Hunter, should anything be due thereon; and that, should it turn out that the amount of the sales of the said leaf tobacco, consigned to the said John Arrington & Sons by the said Claude Hunter, be more than sufficient to pay, their said account against the said Claude Hunter, the said John Arrington & Sons may pay to said Arrington & Scott such excess, the same to be credited to the said account of the said Arrington & Scott against the said Claude Hunter, if anything should be due thereon," &c.

The plaintiffs brought this action to compel the defendants to an account and settlement of the debts due to the defendants creditors, mentioned in the deeds of trust set forth above, to compel such creditors to an account of the cases of tobacco and the crop of tobacco received by them and the sales thereof made by them, and to apply the proceeds of such sales in discharge of their debts as provided and directed in the deed of trust—to have the deed and the trust therein created discharged, and the land therein mentioned sold to pay the plaintiffs' judgment, first above mentioned, and to obtain general relief, &c.

The creditor defendants in their answer admitted some of the allegations of the complaint and denied others; they alleged that they had, in all things, observed the purpose and spirit of the trust mentioned, and they filed accounts stated of sales of tobacco received by them, and the application of the proceeds of such sales in discharge of their debts in

part, and they alleged that large balances thereof are yet unpaid, &c., &c.

In the course of the action, it was referred to a referee to take and state an account of the matters of account embraced by the pleadings and the trust.   He took evidence, found the facts and conclusions of law arising thereupon, took and stated an account, and made report of the whole thereof. To this report, the plaintiffs filed divers exceptions to the findings of law and fact, as did, also, the defendants.   The Court overruled the plaintiffs' exceptions, except one of fact, and sustained the defendants' exceptions, except three, as to findings of fact, and gave judgment in favor of the defendants creditors and against the defendant Hunter, and directed a sale of the land, &c., &c.; and the plaintiffs, having excepted, appealed.

*Messrs. T. T. Hicks* and *E. C. Smith,* for the plaintiffs.

*Messrs. J. B. Batchelor* and *W. A. Montgomery,* for the defendants.

MERRIMON, C. J. (after stating the case).   There was a resulting trust in the deed of trust, to be interpreted in favor of the defendant Hunter, and he had, by virtue of it, an equitable estate, or interest, in all the land embraced by the deed.   *Sprinkle* v. *Martin,* 66 N. C., 55.   The docketed judgment of the plaintiffs was a lien upon that interest, but, for reasons clearly expressed in the case just cited, this lien could not be enforced by the ordinary process of execution. To do this, the plaintiffs were put to their action for that purpose, in which the trust provided by the deed could be settled and discharged, and the interests of the defendant Hunter could be devoted to the satisfaction of the plaintiffs' judgment, as far as they might be adequate for the purpose. *The Code,* § 435;  *Sprinkle* v. *Martin, supra;   McKethan* v.

*Walker*, 66 N. C., 95; *Hoppock* v. *Shober*, 69 N. C., 153; *Dixon* v. *Dixon*, 81 N. C., 323.

This action has the nature of an equitable execution. Its purpose is to enforce the plaintiffs' lien by first settling and discharging a prior lien upon the land, created by the deed of trust in favor of the creditor defendants, and, secondly, applying any surplus of the fund arising from a sale of the land, as far as the same may be adequate, to the discharge of the plaintiffs' judgment. To do this, requires that an account shall be taken to ascertain the amount of the debt secured by the first lien, and a sale of the land, unless the debtor shall pay the debts without such sale. Hence, it becomes. necessary to interpret the deed of trust and settle the rights, and the extent of them, of the creditors having the first lien under it.

This deed, though clearly expressed in terms, is peculiar in some of its material provisions. Its true intent and meaning, *as expressed in it,* must prevail. The Court cannot go beyond it, as was contended it should do, and give effect to an intention of the maker, and the parties having benefit or it, not expressed in it, because, to do so would be to render nugatory. in great part, the deed—a chief purpose of which was to prevent and exclude merely verbal agreements and stipulations not expressed in it. These parties could not, by mere verbal agreement, have changed or modified its purpose; they could only have done so by deed, or other proper instrument in writing, executed and perfected before the lien of the plaintiffs attached. As soon as their lien took effect,. the trust could not be changed in any respect, to their prejudice, without their consent. By virtue of it, they at once came to have an interest in the land that could not be abridged or lessened in its extent or in its character by the defendants, by contract in writing or otherwise.

Then, what does the deed before us provide in favor of the creditor defendants? What of their debts are secured, and

how are they secured, by its provisions? It appears from the recitals therein expressed in clear, explicit and unequivocal language and phraseology, that the debts of the defendant debtor due to the creditor defendants, as composing two business firms, were ascertained definite sums of money due to such firms respectively on the day it was executed. Those debts were made up of, and embraced, "money advanced and lent by them (the creditor firms) to him (the debtor defendant) up to and including this date" (the date of the deed). There is no recital, or expression, or provision, in the body of the deed, that, in terms or by implication, suggests a debt, greater or smaller, so due and owing, than those so expressly and certainly expressed; nor does it appear from the deed that the debtor defendant owed, or expected thereafter to owe, to the creditor defendants any debt or debts other than those mentioned; nor, as to these debts, was it agreed in writing that they should bear interest at the rate of eight per cent. per annum. There was no stipulation in the deed as to the rate of interest they should bear.

The debts thus specified with particularity were not, as a whole, the debts secured by the trust created by the deed. It is further recited in the deed that, at the time it was executed, the creditor defendant firms had in their possession certain cases of tobacco to be sold by them for the debtor defendant; that they should sell this tobacco and apply the proceeds thereof to the payment of the debts already mentioned, to the extent they might be sufficient for that purpose. It is manifest from the carefully and precisely expressed recitals, and, as well, all the provisions of the deed in perfect harmony with them, that the tobacco mentioned should be thus devoted and applied, and not otherwise. The deed is based upon the assumption and express agreement that the proceeds of the sales of the tobacco should be thus applied. That it should be, was made a substantial consid-

eration underlying, supporting and giving life and operative effect to the deed.

In like explicit terms it is declared in the deed, and all and every of its provisions are to the same effect, that its purpose was to secure not the debts specified, but the *balance thereof* that the proceeds of the tobacco might not be sufficient to pay. It is declared that there *may be* such unpaid balance, and it recites that, " whereas, the said parties of the first part (the debtor and his wife) desire to secure the payment of *any such balance* as may remain, by a deed of trust upon real and personal estate," &c., the property is conveyed, " in trust, nevertheless, and for the purpose in this deed declared." It is then provided that, " if after the sale of the said leaf tobacco as aforesaid, consigned and delivered as aforesaid," &c., there shall remain a " balance " of the debts mentioned unpaid, &c., and the debtor shall pay this balance, " with interest on said *balance* at the rate of eight per cent. per annum, on or before the first day of December, 1886, then this indenture to be void and of no effect. If, however, after the said sales of the said leaf tobacco by the said," &c , * * * " and the application of the net proceeds aforesaid of the sales toward the said accounts against the said Claude Hunter, any *balance or balances* on same shall remain unpaid, &c.," then the property shall be sold, &c., as directed, and the proceeds thereof applied as may be necessary to the payment of such " balance." It is too plain to admit of serious question that it was intended by the deed to secure only such " balance " of the debts mentioned, after applying to their payment the proceeds of the tobacco mentioned.

The deed conveyed a growing crop of tobacco. It is provided therein that this shall be sold when gathered, and the proceeds thereof applied to the payment of such " balance;" and if there shall not be sufficient for such purpose, *then and then only* shall the land be sold to pay the same.

All the provisions of the deed—its terms and phraseology—all go to show and make manifest that its sole purpose was to secure such " balance " of the indebtedness specified, and that it should be operative and have effect only for that purpose.

No doubt the defendants debtor and creditors could agree to apply the proceeds of the tobacco. as it appears they did do in part, to the payment of debts other than those specified in the deed, or to other purposes, but the creditors could avail themselves of the trust only to secure so much of the indebtedness specified as the net proceeds of the tobacco were inadequate to discharge; and this is so, because the sole purpose of the trust was to secure such " balance" as indicated above.

In ascertaining the " balance "—the debt of the defendant and creditors secured by the deed—they can be allowed to charge interest only at the rate of six per centum per annum, because there was no agreement in writing that they should have a greater rate, not exceeding eight per centum per annum, as allowed by the statute (*The Code*, §.3835). As to any ascertained " balance," they will be entitled to interest at the rate of eight per centum per annum, because it is so provided in the deed signed by the debtor. They will also be entitled to have commissions for selling the tobacco, including the crop gathered and sold, as agreed upon between themselves and the defendant debtor ; and, also, to ordinary, reasonable charges and expenses incident to selling the tobacco in the regular course of business.

The plaintiffs are not parties to the deed of trust, and are not bound by its recitals as to the amount of indebtedness of the debtor defendant to the creditor defendants. They have the right, therefore, if they can, to show that such indebtedness was less as to each firm than was stated in the deed. When such "balance " due the defendant creditors shall be ascertained and paid out of the proceeds of the sales of the

land, any surplus thereof shall be applied to the payment of the plaintiffs' judgment to the extent the same may be suffi- cient for that purpose.

We do not deem it necessary to advert directly to the numerous exceptions to the report of the referee. In view of what we have said, it is clear that the account was not properly taken and stated. We deem it expedient and bet- ter to direct that the account as stated be set aside, and that it be re-referred to the referee to retake and state the same in accordance with this opinion, and to this end he will be at liberty to hear and consider further evidence, if need be. *Grant* v. *Bell*, 90 N. C., 558.

Error.