This was an action for the recovery of real estate, the decision of which was submitted to the court upon a case agreed. On 7 March, 1885, the defendant, Felix Staton, executed two promissory notes to the payees therein named, and for the purpose of securing payment thereof he executed to W. H. Johnston, Esq., a deed conveying the locus in quo, which was duly recorded in the office of the register of deeds of Edgecombe County, upon the following trust: "To have and to hold said land (671) unto said W. H. Johnston, his heirs and assigns, in special trust, however, to hold the same for the uses and purposes hereafter specified, to wit: That if said bonds, with the interest thereon, shall not be paid on or before the day on which they will be due, as before stated, the said Johnston shall, on demand of either of said obligees, after sixty days notice in writing to said Felix Staton that payment of said bonds is required and thirty days advertisement of the time and place of sale at the courthouse door in Tarboro and three other public places in said county, expose said land at public sale before said courthouse door, for cash or on a credit, as he may deem best, and the proceeds apply to the satisfaction of said bonds and interest, or so much as may be due thereon, after retaining reasonable commissions for his trouble, and the residue, if any, shall pay to said Felix Staton or his assigns." On 18 April, 1892, a judgment was recovered against the defendant Staton, which was duly docketed in the Superior Court of said county. At October Term, 1895, of the Superior Court of Edgecombe judgment was rendered in a suit properly instituted for the recovery of the said notes executed by the defendants and secured as aforesaid and sale of said land, in which it was ordered and adjudged that if the indebtedness was not paid by 1 February, 1896, the land conveyed to secure the payment of the same should be sold for cash at the courthouse door at Tarboro by a commissioner therein named. On 10 April, 1902, execution was issued on the aforesaid judgment recovered on 18 April, 1892, against the defendant Staton, and his homestead was duly allotted by metes and bounds; upon such allotment it was ascertained that the judgment debtor owned 80 acres of said land in excess of his homestead, which was also described by metes and bounds and due return made thereof. The (672) sheriff duly levied said execution upon the excess of realty, and *Page 481 
after advertising the same at the courthouse door offered the said 80 acres for sale on the first Monday of September, 1902, when the plaintiff, N.J. Mayo; purchased the same for the sum of $250 and paid the purchase money therefor, receiving a deed from the sheriff for said land, which was duly recorded and made a part of the case agreed. That it appears from said deed that the sheriff sold the said 80 acres of land, making no reference to the deed in trust hereinbefore mentioned or other encumbrance thereon. On the first Monday in January, 1903, the commissioner appointed by the court for that purpose offered for sale at the courthouse door in Tarboro all that portion of the land embraced in the deed in trust to Mr. Johnston of 7 March, 1885, which included the part of said land allotted to the defendant Station as his homestead; he did not expose to sale the portion of said land in excess of the said homestead; the land was bid off at said sale for the sum of $2,000; the bid was raised 10 per cent, and at March Term, 1903, an interlocutory judgment was rendered in which the court used the following language: "I am of opinion that Mayo, being a purchaser for value of the 80 acres in the mortgage outside of homestead boundaries, and having paid his money ($250) therefor, acquired title thereto, subject to this mortgage lien, and has an equity as against defendant to have the land in the mortgage and within homestead boundaries sold first and before the 80 acres. This equity is strengthened by the admitted fact that the land within the homestead boundaries will bring sufficient to give defendant $1,000 and to pay the mortgage debt and the balance due on the judgment debt, and still leave a surplus to be paid defendant." It was adjudged that if the defendant Station failed to pay the judgment on or before the day therein named, that the commissioner should proceed to advertise the land described in the deed of trust, excepting the 80 acres, and sell the same at the courthouse door for cash, etc. The (673) defendant Station thereafter sold and conveyed all his right, title, and interest in the entire tract of land to his codefendant, Lucy C. Staton, who, prior to the day fixed, paid off and discharged the debt secured in the said deed in trust to Mr. Johnson. At September Term, 1903, of said court the said commissioner made his report, in which he set forth the payment of said judgment, etc. At the said term final judgment was rendered confirming said report and directing the payment of costs, etc. There are other facts stated in the case agreed which it is conceded are not material to be set forth or considered for the purpose of passing upon this appeal. His Honor, Judge Peebles, adjudged upon the case agreed that the plaintiff was the owner of the land and entitled to the immediate possession thereof, to which the defendant excepted and appealed. *Page 482 
After stating the facts: It is conceded by counsel in their well-considered briefs that the case agreed presents for decision the question whether, at the time of sale by the sheriff and purchase by the plaintiff, the interest of the judgment debtor in the locus in quo
was subject to sale under execution. His Honor in his carefully prepared opinion and judgment makes an able and exhaustive review of the cases decided by this Court and answers the question in the affirmative, rendering judgment for the plaintiff. The case was ably and exhaustively argued and counsel have furnished us full briefs of the authorities. The act of 1812 may be found in The Code, sec. 450, subsecs. 3-4, and sec. 452. It has been frequently construed by this Court. It must be conceded that the decisions are not in harmony, and that there is much dicta to be found which it is difficult to reconcile. The question being of (674) much practical importance, especially since deeds in trust have so largely superseded the use of mortgages for the security of debts, we have deemed it well to endeavor to "run the line" and "mark the boundaries," removing, if possible, such confusion as may exist in our decided cases. We are not unmindful of the difficulty of the undertaking. As we shall see, several of the ablest and most learned of the judges who have sat upon this bench have given the subject careful consideration. It may be that some of them have failed to carefully examine the decisions made by those who have preceded them. However this may be, our investigation brings us to a conclusion different from that reached by the learned judge of the Superior Court, and it is proper that we set forth the reasons by which we have been controlled in our conclusion.
In Harrison v. Battle, 16 N.C. 537, one Hunt conveyed to Mr. Battle valuable real and personal estate in trust to sell and apply the proceeds to the payment of certain debts scheduled in the deed, with a resulting trust to the grantor. Judgment was recovered on a debt not secured in the deed and execution levied upon Hunt's interest in the property. Before the sale of any part of the property, Hunt assigned to several persons his interest in the residue after the payment of the debts, notice of which was served on the trustee. The debts secured in the deed were paid from the proceeds of the personal property assigned to the trustee. The plaintiff being the owner of the judgment against Hunt, filed his bill in equity against the trustee and all others interested in the property and its proceeds. The court decreed a sale by the trustee, with direction to hold the proceeds subject to the direction of the court. Henderson, C. J., delivering the opinion after an advisari, says that prior to the act of *Page 483 
1812 the levy of the execution did not create a lien on the interest (675) of Hunt, because it was not liable to sale. He said: "Nor is the trust in favor of Hunt one of that description authorized to be taken in execution under the first section of the act of 1812. The use or trust there spoken of is a pure and unmixed one; for the doing execution under that section, to use its own terms, divests the estates both of the trustee and cestui que trust and transfers them to the purchaser." We note this case now only so far as it affects the construction of the first section of the act. It does not appear from the statement of facts whether the debts were paid by the sale of the personalty prior or subsequent to the levy or teste of the fieri facias. The next case in order of time isPool v. Glover, 24 N.C. 129. Josiah Jordan conveyed to a trustee real estate in trust to secure and pay certain debts, etc., and upon further trust that if said debts should be paid without a sale of the lands, to convey to said Josiah, etc. A judgment having been recovered against Jordan, a writ of fieri facias was issued and the sheriff sold "the equity or interest of Jordan of and in the premises." Defendant purchased and refused to pay his bid, for that Jordan had no interest subject to sale under an execution. Ruffin, C. J., referring to Harrison v. Battle, supra, says: "That case determines the precise point that a conveyance of land of this nature by a debtor to a third person in trust by a sale to pay the bargainor's debts, with a resulting trust to the bargainor, leaves an interest in the bargainor which is not a trust within the first section of the act." We quote the remaining part of this sentence later on.
In Davis v. Petway, 27 N.C. 576, Ruffin, C. J., after stating the distinction between those cases in which the cestui que trust
could, at once, call for the conveyance of the legal title, and those wherein it was necessary that the trustee should retain the legal title to protect the interest, either of immediate or ulterior trusts, says: "Now, the act of 1812 did not mean to change the nature of trusts, the relation of trustee and cestui que trust, or the rights of the latter against the former. The sole purpose of it was to render the interest of the cestui que trust liable, at law, as (676) it was in equity, for the debts of the cestui que trust in certain cases by transferring by a sale or execution against the cestui que trust the legal estate of the trustee as well as the trust estate of the debtor. It is the necessary construction of such a provision that it was not intended to embrace any such cases as those adverted to, in which the trustee could not voluntarily convey to the debtor without incurring a breach of trust to other persons with whose interest he is also charged. He concludes: "As the court would not decree a conveyance at the suit of the cestui que trust, it follows that we must hold that the trustee's estate would not be divested by a sheriff's sale under execution against the cestui que trust."
The next case in which the question is *Page 484 
discussed is Anderson v. Holloman, 46 N.C. 169. The point decided there is that "The purchaser at a sheriff's sale of an interest resulting to a debtor under a deed of trust does not acquire a legal estate." That was an action of trespass q. c. f. It was held that as the plaintiff did not show actual possession, he did not have legal title which drew the possession to it, and could not, therefore, maintain the action. The debts secured by the trust deed had not been paid, and it was held that until paid the legal title remained in the trustee. No case is cited upon this point. In Thompson v. Ford, 29 N.C. 418, a slave had been conveyed in trust for the payment of debts. He was sold under execution against the party executing the deed in trust. Ruffin, C. J., said that no title passed under the second section of the act of 1812, because it was confined to mortgages of lands, tenements, and hereditaments. Nor could the slave be sold under the first section, because when he was sold there was a balance due on the debts secured by the deed. These cases being the only ones in which the question is raised prior to 1870, would seem to settle the proposition that a resulting trust such as Staton (677) owned could not be sold under execution against the cestui que trust under the first section of the act of 1812. It would seem to be equally well settled by these decisions that such interest could be sold under the second section of the act, treating it as an equity of redemption. Returning to the case of Harrison v. Battle, supra, Henderson,C. J., says: "But we believe that, so far as regards the land, Hunt's interest may be sold under second section of the act, for we cannot distinguish his right to have the land again, after the payment of the debt, for which it stood as a security, from an equity of redemption. It has all the essentials of that right, although it wants some of its formal parts; it is conveyed to secure the payment of a debt; upon the payment of the debt Hunt has a right to call for a reconveyance. . . . We cannot, therefore, distinguish this interest from an equity of redemption; and its exemption from sale under a fieri facias is equally an evil with the exemption of equities of redemption. The mischief is precisely the same, and we therefore think it is within the spirit of the second section of the act of 1812." The learned justice proceeds to say that although the creditor has a remedy at law, "it is not an effectual one." He decides that the jurisdiction of the court of equity is not ousted because a remedy is given at law, "unless it be a plain one," concluding: "The remedy here is more effectual, because this Court ascertains all the claims upon the thing and sells the corpus itself. The purchaser gets what he purchased, no more and no less. He does not make his gain by another's loss." It would be difficult to state the reasons for confining the operation of the act of 1812 to its terms more strongly or clearly. How far the Court *Page 485 
was controlled in its decision by the fact that the debts secured by the trust deed had been paid, it is impossible to say.
Returning to Pool v. Glover, supra, we find Ruffin, C. J., con- (678) curring in the decision that the resulting trust could not be sold under the first section, a part of his language we have quoted, referring to the trust, concluding with these words: "But is an equity of redemption within the second branch of it (the act of 1812)? As an authority none could be more apposite to the case before us. The counsel, indeed, endeavored to distinguish the cases upon the ground that in Harrison v.Battle the time for the sale had passed and enough of the estate conveyed had been sold to pay all the scheduled debts; whereas here the time for a sale has not arrived, and no part of the debt has been paid. But that distinction cannot be sustained; for, although there might be something in it, if the case stood on the act of 1812 by itself, yet the subsequent acts subject the legal right of redemption to execution in like manner as the equity of redemption was liable under the previous act." He concludes that whatever might have been sold after the day of forfeiture may be sold before that day. The learned Chief Justice discusses the question at some length. As was his custom, he states his conclusion forcibly and clearly. There can be but one construction put upon his opinion. The case is cited in S. v. Pool, 27 N.C. 108; Doak v. Bank,28 N.C. 332. Since 1872 this Court has, with equal uniformity, held that a resulting trust remaining in the grantor conveying property to secure the payment of a debt therein recited, is not subject to sale under execution. In Sprinkle v. Martin, 66 N.C. 55, it would seem that the exact question was presented. The action was for the recovery of a tract of land. The title was put in issue. It appeared that the plaintiff, being the owner of the land on 27 March, 1855, conveyed it to one Cook to secure the payment of a debt due to two other parties. On 12 March, 1869, Cook reconveyed the land to him. On 31 May, 1858, the interest of the plaintiff in the land was sold under an execution issued upon a judgment against him and purchased by the defendant (679) The sole question presented by the exception was whether the defendant acquired any title under the sale and deed made pursuant thereto. Pearson,C. J., said: "The defendant acquired no title by his purchase at the sheriff's sale, for Sprinkle (the defendant in execution) had no estate or interest in the land which could be sold by the sheriff under execution," citing Thompson v. Ford and Harrison v. Battle, supra. He says: "After all the debts secured by the deed of trust are satisfied, the resulting trust becomes liable to sale under execution, for the purchaser may then take the legal as well as the equitable estate without prejudice to third persons. Such was the case in Harrison v. Battle." While it is true the opinion is short, and no other authorities cited than those *Page 486 
named, we cannot suppose that the Chief Justice wrote for a unanimous Court without consideration. Able and learned counsel represented the parties in this Court.
The question was again before this Court at the same term in McKeithanv. Walker, 66 N.C. 95. The plaintiff having a docketed judgment against the defendant, made a motion based upon an affidavit pursuant to section 266, C. C. P., section 490 of The Code, setting forth that an execution had been issued on the judgment and returned unsatisfied; that W. J. Brown had property in his possession belonging to the defendant, etc. Brown, pursuant to notice, appeared and stated that he held a deed of trust executed by defendant to secure certain debts, etc. That if said debts were not paid he was directed to sell the land and from the proceeds pay them and pay the surplus to said Walker. Plaintiff asked the court to direct the sale of the land, etc. Motion denied, and plaintiff appealed. Rodman, J., said: "At the time of the docketing, therefore, the defendant Walker had a resulting trust in the land (680) conveyed after payment of the debts secured." The learned justice proceeds to declare that the language of section 254, C. C. P. (Code, sec. 435), is sufficiently comprehensive to include equitable as well as legal estates, and that by docketing the judgment the plaintiff acquired a lien on the resulting trust of the defendant. He says: "It must be noted, however, that this section does not make liable to sale underexecution any equitable estates which were not so by the construction of the act of 1812 before the C. C. P. In order to sell an equitable estate, not liable to sale under execution at law by that act, that is to say, one which is neither a pure and simple trust nor an equity of redemption, the plaintiff in the execution must still resort to his action as formerly to his bill in equity, to ascertain the rights of the parties and enforce his lien by the docketing of his judgment instead of by the filing of his bill, or the issuing of his summons to enforce it. Thus the law is made more uniform, and the unnecessary and useless distinction between legal and equitable estates is destroyed. And that is probably as far as the law can go in that direction." The Court, therefore, twice at the same term, held that a resulting trust, such as the one before us, could not be sold under execution. The next case in which any reference is made to the subject isHutchinson v. Symons, 67 N.C. 156. It must be conceded that the question was not presented in that case and that the observations of Chief JusticePearson were not necessary to its decision. For the first time we find any criticism of Pool v. Glover, supra, although the two cases decided at the preceding term cannot be reconciled with it. The Chief Justice says plainly that in Pool v. Glover there was "a misapprehension of the law" and "a confounding of the distinction between a `trust' and `an equity of redemption.'" He accounts for *Page 487 
this by the failure of the Court to advert to the fact that in Harrison v.Battle all of the debts secured in the deed of trust had been paid, etc. As we have seen, Ruffin, C. J., expressly notices the fact (681) that in the first case the debts had been paid, where as in the case before the Court no part of the debts had been paid — and says that "the distinction cannot be sustained." It is true that he gives a reason which does not seem responsive to the objection made by counsel. He seems to think that the question is affected by the act of 1812, which subjects the legal right of redemption to sale. The reason which evidently the distinguished counsel for the defendant gave for the distinction was that until the debts were paid the trust was not a pure, unmixed one, as inHarrison v. Battle. This distinction is clearly recognized and pointed out by Pearson, C. J., in Sprinkle v. Martin, supra. It is difficult to understand why he did not make the criticism of Pool v. Glover inSprinkle v. Martin, wherein his opinion is in direct conflict with that case However this may be, there can be no misunderstanding the opinion of the Chief Justice. He says that the distinction between a trust and an equity of redemption, though plain, is confounded by the decision inPool v. Glover, "Notwithstanding that the statute of 1812, by having two distinct sections, takes care to prevent this conclusion and treats a trust and an equity of redemption as two separate and distinct things." The effect of the act of 1812 is again discussed in Tally v. Reid, 72 N.C. 336, by Reade, J., and Sprinkle v. Martin approved. The relation of the parties there was vendor and vendee, and it was held that the interest of the vendor was not subject to sale under execution. This line of cases has been uniformly followed. Mannix v. Ihrie, 76 N.C. 299; Hardinv. Ray, 94 N.C. 456; Trimble v. Hunter, 104 N.C. 129; Everett v.Raby, 104 N.C. 479; Gorrell v. Alspaugh, 120 N.C. 362; Johnson v.Case, 131 N.C. 492. In several of these cases the exact point was not involved. They are cited for the purpose of showing that since 1872 there has been a uniform current of decisions citing and approvingSprinkle v. Martin and McKeithan v. Walker, supra. In (682) but one of them (Hutchison v. Symons, supra) is Pool v. Glover, cited, and then, as we have seen, strongly criticised. It is true that in some of the cases Harrison v. Battle is cited, and we concur with his Honor in the opinion that its full scope is not adverted to. While the point actually decided in that case is that the resulting trust in the grantor was likened to an equity of redemption, the fact is that the debts were paid from other sources. It is true, as said by his Honor, that it does not clearly appear whether they were paid before or after the teste of the execution or levy on the land. It is clear that both Ruffin and Pearson, C. J., treated the case upon the theory that they paid prior to the teste of the execution. It is certainly a subject of regret that a question of so *Page 488 
much practical importance to both debtor and creditor has been involved in uncertainty. We cannot concur with his Honor in the opinion that the point is not presented in Sprinkle v. Martin and McKeithan v.Walker. In our opinion, those cases conflict with the reasoning of the Court in Harrison v. Battle. We cannot reconcile them with Poole v.Glover, supra. While, as we have said, the point was not presented inHutchison v. Symons, we cannot escape the conviction that Chief JusticePearson, writing for the same Court which had decided Sprinklev. Martin and McKeithan v. Walker, at January Term, 1872, took occasion at the next succeeding term to express his dissent from Pool v.Glover, and give his reasons therefor. It is important that the question be settled so that counsel may know how to advise clients, and property affected by equitable titles shall not be made the subject of speculation and sacrificed by being exposed to sale under conditions which make the right acquired uncertain. We are, in view of the decisions of this Court, compelled to decide which of the two conflicting lines of judicial interpretation we will adopt. As we have endeavored to show, this (683) Court has since 1872 uniformly held that such interest or estate as Felix Staton had in the land was subject to the lien of a docketed judgment, but that it could be enforced only by a civil action in the nature of a bill in equity. Mr. Freeman, in his work on Executions, 188, says that the English decisions confined the operation of the statute 29 Car. II., ch. 3, to "clear and unmixed trusts." He further says that in North Carolina and other states which he names "the decisions are in substantial harmony with those made under the statute of 29 Car. II. Lands are not, then, subject to execution against the cestui que trust unless the trustee convey him the entire legal title without committing a breach of trust." The same conclusion is reached by the Supreme Court of South Carolina in Bristow v. McCall, 16 S.C. 548. We concur with the opinion ofJudge Pearson that the statute expressly recognizes the distinction between a resulting trust and an equity of redemption. The origin, history, development, and attributes of the two are a part of the common learning of students of our jurisprudence. We think that we can discover in the language of the Chief Justice in his opinion in Pool v. Glover that his mind was impressed with the difficulty of extending the section of the statute authorizing the sale of "trusts" to include an equity of redemption. However this may be, in our opinion the later decisions are controlling as authority. In view of the complications often attending the adjustment of the amount of indebtedness, the rights of creditors, homestead and dower rights of the debtor and his wife, we think it better for all interests involved that, except when the trust is "pure and unmixed" and the right of the cestui que trust to call for the immediate conveyance of the legal title, the lien of the judgment *Page 489 
creditor should be enforced by a civil action. All persons having (684) any interest in the land or the proceeds of the sale may be brought before the court, decrees may be so molded that they may be protected and a clear title sold. This is especially true at this time, when homestead rights are involved and to be preserved. This is illustrated in Leak v. Gay,107 N.C. 468, and many other cases in our Reports. The judgment, when docketed, fixes the lien so that the rights of the creditor are protected. The remedy is simple and inexpensive. The creditor sets forth in a verified complaint a concise statement of the facts and the verified answer of the defendant brings before the court the exact condition of the title, so that a decree may be made promptly. The plaintiff, however, says that, conceding that the interest of Staton was not an equity of redemption and not subject to sale under the second section of the act, and conceding further that such interest could not be sold under the first section prior to 1883 — this section was so amended by The Code of 1883, section 450, that it is now subject to sale. He calls our attention to the change made at that time. The original act provides that when any person shall be seized, etc., of any lands, etc., in trust for any person against whom any execution or other process shall be issued, such estate may be levied on or sold under such execution or process. "And the purchaser thereof shall hold and enjoy the same freed and discharged from all encumbrances of the person so seized or possessed in trust as aforesaid." The last clause is stricken from the section in The Code of 1883. The plaintiff's counsel says that the reason assigned by the court why mixed trusts could not be sold under execution was that, by virtue of the statute, the legal as well as the equitable title vested in the purchaser, thereby preventing the trustees from executing the trust.
Counsel overlooked the fact that the language stricken out in subsection 4, section 450, is incorporated in section 452. Hence, so much of the argument as relates to that phase of the case becomes irrelevant. If the sale is sustained the legal title passed from Mr. (685) Johnston into the plaintiff.
The real test which is applied in all of the cases is whether the trust is pure and unmixed, so that the cestui que trust may, immediately and without affecting or disturbing the relation of the trustee to any other person, call for the legal estate. If so, his estate may be sold under execution; otherwise, it may not be. We think this the true criterion by which to solve the question. To the end that we may be clearly understood, we deem it not improper to say that our decision is confined to deeds of trust, both in form and substance. It does not in any manner involve mortgages wherein an estate is conveyed, either to the creditor or to some third person, upon condition that if the indebtedness be *Page 490 
paid at maturity "the deed and every clause thereof are null and void." It has become usual to insert a further clause empowering the mortgagee, who may be either the creditor or some third person named in the deed, in the event of a failure to pay the debt by the mortgagor, to sell and from the proceeds pay the debt, and the residue to the mortgagor. The right left in the mortgagor is twofold; first, to pay the debt before maturity and thus perform the condition by which the deed is avoided at law, and, second, after forfeiture and condition broken, to pay the debt and have a reconveyance. Under our statute this is accomplished by cancellation of record. This latter right is a well-defined estate, created and recognized, originally, only in equity, but by a process of judicial evolution and legislative enactment recognized at law. Bispham Eq., 150. This estate was well known to lawyers prior to the statute of 29 Chas. II., and when it was described in the second section of the act in contradistinction to trusts, it was clearly, as said by Pearson,C. J., a recognition that it was a separate and distinct thing from a resulting trust. While it is true that in the one sense the act of (686) 1812 was remedial and should be construed to advance the remedy and remedy the evil, it was also in derogation of the common law and the statutes then in force, which permitted only well-defined estates to be sold under execution. Henderson, C. J., in Harrison v. Battle, supra, concedes that a resulting trust such as Hunt had in the land is not within the words of the second section of the act, but says that it comes within its spirit. Upon a careful review of the question, the adjudged cases and the language of the act, we conclude:
1. That when land is conveyed to a trustee upon a declaration of trust (and there is no clause of defeasance in the deed) to sell for the payment of debt or to discharge any other duty, in which persons other than the judgment debtor have an interest, or when for any other reason the judgment debtor may not call for an immediate transfer of the legal title, the interest, estate, or right of the judgment debtor, although subject to the lien of a docketed judgment, cannot be sold under execution. The lien can be enforced only by judgment rendered in a civil action.
2. That an equity of redemption, as we have defined it, whether created by mortgage deed made to the creditor or to a third person with or without power of sale, may be sold under execution as provided by section 450, subsection 3, of The Code, being section 2 of the act of 1812.
We do not think the interlocutory judgment rendered by Judge Brown at March Term, 1903, affects the rights of the parties. The recitals by his Honor were made only for the purpose of directing the commissioner how to proceed in that action. It was not a final determination of the rights of the parties. The land was not sold by the commissioner. His Honor's judgment, from which this appeal is taken, *Page 491 
does not treat the interlocutory judgment as in any manner affecting the questions decided in this action.
We concur with his Honor in the opinion that the provisions (687) of section 451 of The Code are not mandatory. Thorpe v. Ricks,21 N.C. 619.
For the reasons pointed out, the judgment of the court below must be reversed, with directions to it to render judgment for the defendant upon the case agreed.
Reversed.
Cited: McPeters v. English, 141 N.C. 494; Johnson v. Whilden,166 N.C. 111; Williams v. Parsons, 167 N.C. 531; Fowle v. McLean,168 N.C. 540; Parrott v. Hardesty, 169 N.C. 668; Evans v. Brendle,173 N.C. 155, 160.
(688)